UNITED STATES of America and Frank Camp, Special Agent, Internal Revenue Service, Appellees,

v.

Windel R. CARROLL, Appellant.

No. 77–2043 and 77–2044.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Dec. 20, 1977.

Decided Dec. 23, 1977.

Charles E. Graves, U. S. Atty., Cheyenne, Wyo. (Lawrence A. Bobbitt, III, Asst. U. S. Atty., Cheyenne, Wyo., with him on the brief), for appellees.

Windel R. Carroll, pro se.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

PER CURIAM.

Appellant-respondent Carroll was found to be in civil contempt for failure to obey a court order requiring compliance with an Internal Revenue Service summons. He was sentenced to 40 days in jail, and has appealed. In compliance with 28 U.S.C. § 1826(b), we have expedited the appeal. The record, including transcripts of all court hearings, has been filed. The appellant pro se has presented both brief and oral argument. We affirm.

Appellant is a tax protestor. The summons required him to appear before an IRS agent for examination relative to his federal income tax liability for the years 1975 and 1976 and to produce his records pertaining to those years. Appellant appeared and, on the claim of First, Fourth, and Fifth Amendment privileges, refused to an-

swer questions or produce documents. On the authority of 26 U.S.C. §§ 7402(b) and 7604(a), the IRS petitioned for enforcement. A hearing was held before United States District Judge Brimmer. Appellant requested an attorney but refused to take an oath and testify concerning his financial ability to employ an attorney. The court denied the request and appellant appeared pro se. The court ordered compliance. Appellant refused to comply. IRS then applied for a civil contempt citation. Appellant again appeared pro se. The court adjudged him in civil contempt and sentenced him to 40 days in jail, with the right to purge himself of contempt by obedience to the summons.

This case follows a pattern of tax protest in which an increasing number of individuals defy the IRS by claiming religious privileges under the First Amendment, protection of privacy under the Fourth Amendment, and freedom from incrimination under the Fifth Amendment. The necessity for prompt hearings on these matters at both the trial and appellate levels places an ever-expanding burden on the federal courts.

 Obscurity shrouds the First Amendment claim. The Establishment Clause of that amendment insures governmental neutrality in religious matters. *Gillette v. United States*, 401 U.S. 437, 439, 91 S.Ct. 828, 28 L.Ed.2d 168. The Internal Revenue Code applies to everyone without regard to religious belief. Freedom of belief must be distinguished from freedom to act. Conduct is subject to regulation for the protection of society. *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 84 L.Ed. 1213. The Free Exercise Clause does not permit a citizen to become a law unto himself because of his religious belief. *Reynolds v. United States*, 98 U.S. 145, 166–167, 25 L.Ed. 244; see also *United States v. Grismore*, 10 Cir., 564 F.2d 929, opinion filed November 4, 1977.

 Appellant said that he could not deliver his records for the period after March 1, 1976, because he had given his upholstery business, and all of his records, to the Church of Life Science. The business was then conducted in the name of the Church which furnished support for him and his family. He was a minister of the Church and conducted meetings in his home. There is no showing that the Church of Life Science ever qualified for exemption under 26 U.S.C. § 501(c)(3). The record sustains the court's finding that the use of the Church was "a subterfuge and a sham." Appellant's contentions based on the First Amendment are all without validity.

Appellant's reliance on his right of privacy under the Fourth Amendment, and of protection against self-incrimination under the Fifth Amendment, may be considered together. His refusal to answer simple and specific questions was based on a general claim of constitutional right and privilege without any statement of how the right would be denied or the effect of denial. In *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, the Court said:

"The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."

 The circuits have held with great uniformity that a blanket refusal to answer questions does not suffice to raise constitutional questions. See *United States v. Malnik*, 5 Cir., 489 F.2d 682, 685, cert. denied 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50, and cases there cited. See also our unpublished opinion in No. 77–1478, *United States v. Coad*, filed July 20, 1977. The record shows nothing in the questions asked, or the demand for production of records, which "might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 487, 71 S.Ct. at 818. Because of the failure of appellant to specify how he would be injured by any specific question, the trial court had nothing on which to make a determination of any constitutional right or privilege. The federal self-assessment system of income taxes, see *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 60, 94 S.Ct. 1494, 39 L.Ed.2d 812, is unworkable if the

**958**

sanctions imposed may be avoided by a unilateral and unsupportable claim of constitutional right.

■ Appellant argues that the summons was issued in bad faith because the intent of the IRS investigation was to secure evidence for a criminal investigation. We find nothing in the record to support the claim. The IRS agent was authorized to make civil, not criminal, investigations. He was inquiring because appellant had filed no income tax returns for 1975 and 1976. There had been no recommendation for criminal prosecution. In *Donaldson v. United States*, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580, the Court said:

"We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution."

We recognize that the Donaldson opinion has received differing interpretations in the various circuits. See the discussion in *United States v. LaSalle Nat. Bank*, 7 Cir., 554 F.2d 303, 308, cert. granted —— U.S. ——, 98 S.Ct. 632, 54 L.Ed.2d 489 (1977). In the LaSalle Bank case, the trial court found that the summons was issued in bad faith. In the case at bar, nothing in the record supports a bad faith finding.

■ Appellant moved to disqualify Judge Brimmer on the ground that he had previously ruled against protestors in tax cases. "Adverse rulings, standing alone, do not establish judicial bias or prejudice." *United States v. Schwartz*, 2 Cir., 535 F.2d 160, 165, cert. denied 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581; see also *Berger v. United States*, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481. The motion was properly rejected.

■ Respondent was not entitled to a jury trial. The proceedings related to civil contempt and a jury trial was not required. *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 and *Cheff v. Schnackenberg*, 384 U.S. 373, 377, 86 S.Ct. 1523, 16 L.Ed.2d 629.

Affirmed.